**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

STEFANIE BOONE

Plaintiff

Case No. 1:24-cv-582

v.

LOWELL AREA SCHOOLS; NATE FOWLER in his official capacity as Superintendent of Lowell Area Schools; DAN VANDERMEULEN in his official capacity as Assistant Superintendent of Curriculum for Lowell Area Schools; STEVE GOUGH in his official capacity as Principal of Lowell High School; JACOB STROTHEIDE in his official capacity as Assistant Principal of Lowell High School; ABBY WISEMAN in her official capacity as Principal of Lowell Middle School; RON ACHESON in his official capacity as Assistant Principal of Lowell Middle School; and CHRISTINE BEACHLER in her official capacity as Lowell Area Schools Library Media Director

HON. PAUL L. MALONEY

Defendants.

_______________________________________/

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS**

* * * **ORAL ARGUMENT REQUESTED** * * *

NOW COMES Plaintiff, STEFANIE BOONE, by and through her attorney, DePERNO LAW OFFICE, PLLC, and hereby responds to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(B)(6) [ECF No. 22] and accompanying brief [ECF No. 23].

WHEREFORE, Plaintiff respectfully requests that this Honorable Court deny Defendants' motion for the reasons stated in the accompanying brief in support.

Respectfully submitted

DePERNO LAW OFFICE, PLLC
Attorney for Plaintiff

Dated: October 28, 2024

/s/ *Matthew S. DePerno*
PO Box 1596
Portage, MI 49081
(269) 321-5064
matthew@depernolaw.com

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

STEFANIE BOONE

Plaintiff

Case No. 1:24-cv-582

v.

LOWELL AREA SCHOOLS; NATE FOWLER in his official capacity as Superintendent of Lowell Area Schools; DAN VANDERMEULEN in his official capacity as Assistant Superintendent of Curriculum for Lowell Area Schools; STEVE GOUGH in his official capacity as Principal of Lowell High School; JACOB STROTHEIDE in his official capacity as Assistant Principal of Lowell High School; ABBY WISEMAN in her official capacity as Principal of Lowell Middle School; RON ACHESON in his official capacity as Assistant Principal of Lowell Middle School; and CHRISTINE BEACHLER in her official capacity as Lowell Area Schools Library Media Director

HON. PAUL L. MALONEY

Defendants.
_______________________________________/

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS TO DISMISS**

* * * **ORAL ARGUMENT REQUESTED** * * *

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... iii

EXHIBITS ..... vii

GENERAL PREFATORY OBJECTIONS ..... 1

FACTS ..... 2

STANDARD OF REVIEW ..... 5

1. Fed. R. Civ. P. 12(b)(6) ..... 5

2. Fed. R. Civ. P. 56 ..... 5

LAW AND ARGUMENT ..... 6

1. Plaintiff has stated a viable Monell claim ..... 6

   A. Plaintiff has properly alleged an official unconstitutional policy ..... 8

   B. Plaintiff has properly alleged actions by officials with final decision-making authority ..... 14

   C. Plaintiff has properly alleged a policy of inadequate training ..... 16

   D. Plaintiff has properly alleged a custom of tolerating constitutional violations ..... 17

2. Plaintiff has properly pleaded claims against the individual Defendants as a matter of law ..... 18

   A. Plaintiff has pleaded factual allegations against Defendant Fowler ..... 18

   B. Plaintiff has pleaded factual allegations against Defendant VanderMeulen, Defendant Strotheide ..... 19

   C. Plaintiff has pleaded factual allegations against Defendant Wiseman ..... 20

   D. Plaintiff has pleaded factual allegations against Defendant Acheson ..... 21

   E. Plaintiff has pleaded factual allegations against Defendant Beachler ..... 21

3. Plaintiff has alleged an underlying constitutional violation ..... 22

   A. Plaintiff has a right to communicate with LAS staff ..... 23

   B. Plaintiff has alleged a claim for "banned" speech or prior restraint ..... 25

   C. Plaintiff has stated a claim for due process void for vagueness ..... 29

4. The individual Defendants are not entitled to qualified immunity ..... 30

5. Title IX is a proper claim in this context .....32

6. Plaintiff stated a viable claim for breach of fiduciary duty .....32

CONCLUSION .....34

SIGNATURE .....34

CERTIFICATE OF SERVICE .....34

## TABLE OF AUTHORITIES


**FEDERAL CASES** **Page**

*Adickes v. Kress & Co.*, 398 U.S. 144 (1970)....................6

*Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003)....................23

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).................... 5-6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................5

*Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545 (6th Cir. 2007). ....................29

*Bair v. Shippensburg Univ.*, 280 F. Supp. 2d 357 (M.D. Pa. 2003). ....................28

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....................5

*Benzon v. Stanley*, 2004 U.S. Dist. LEXIS 2669 (M.D. Tenn. Jan. 8, 2004....................1

*Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228 (6th Cir. 2015)....................28

*Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013)....................7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)....................6

*CenTra, Inc. v. Estrin*, 538 F.3d 402 (6th Cir.2008)....................2

*Ciminillo v. Streicher*, 434 F.3d 461 (6th Cir. 2006)....................8

*City of Canton v. Harris*, 489 U.S. 378 (1989)....................8

*Dambrot v. Cent. Michigan University*, 55 F.3d 1177 (6th Cir. 1995)....................28

*Daniel v. Cook Cnty.*, 833 F.3d 728 (7th Cir. 2016)....................7

*Delphi Automotive PLC v Absmeier*, 167 F Supp 3d 868 (E.D. Mich, 2016) ....................32

*Doe v. University of Michigan*, 721 F. Supp. 852 (E.D. Mich 1989) ....................22

*Flagg v. City of Detroit*, 715 F.3d 165 (6th Cir. 2013);....................7

*Gaines-Hanna v. Farmington Pub. Sch. Dist.*, No. 04-74910, 2007 WL 1201567 (E.D. Mich., April 20, 2007), .................... 23-24

*General Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095 (6th Cir. 1994). ....................6

*Gibson v. Matthews,* 926 F.2d 532 (6th Cir.1991)....................31

*Gooding v. Wilson*, 405 U.S. 518 (1972)....................28

*Grayned v. City of Rockford*, 408 U.S. 104 (1972)....................29

*Greenberg v. Life Ins. Co.*, 177 F.3d 507 (6th Cir. 1999)....................1

*Hays v Jefferson Cnty*, 668 F.2d 869 (6th Cir. 1982). ....................31

*Healy v. James*, 408 U.S. 169 (1972) .................... 22-23

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc*., 515 U.S. 557 (1995)....................23

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988)....................28

*Jackson v City of Cleveland*, 925 F.3d 793 (6th Cir. 2019)....................7

*Keyishian v. Bd. of Regents*, 385 U.S. 589 (1967)) ....................22

*Leonardson v. City of East Lansing*, 896 F.2d 190 (6th Cir. 1990)....................29

*Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494 (6th Cir. 2006)....................2

*Monell v Dep't of Soc. Servs. of City if New York*, 436 U.S. 658 (1978).................... 6-7, 31

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015); *Baynes v. Cleland*, 799 F.3d 600 (6th Cir. 2015) ....................31

*Paige v. Coyner*, 614 F.3d 273 (6th Cir. 2010)....................7

*Papish v. Bd. of Curators of Univ. of Mo*., 410 U.S. 667 (1973)....................23

*Pearson v. Callahan*, 555 U.S. 223 (2009)....................30

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)....................7

*Reguli v. Russ*, 2023 U.S. Dist. LEXIS 167257 (M.D. Tenn. Aug. 22, 2023) ....................1

*Saucier v. Katz*, 533 U.S. 194 (2001). ....................30

*Saxe v. State College Area School Dist.*, 240 F.3d 200 (3d Cir. 2001) .................... 28-29

*Sigley v. City of Parma Heights,* 437 F.3d 527 (6th Cir.2006)....................31

*Scull v. Commonwealth of Va. ex rel. Comm. on Law Reform and Racial Activities*, 359 U.S. 344 (1959)....................29

*Shelton v. Tucker*, 364 U.S. 476 (1960))....................22

*Solid Rock Foundation v. Ohio State University*, 478 F. Supp. 96 (S.D. Ohio 1979)....................22

*Speet v. Schuette*, 726 F.3d 867 (6th Cir. 2013 ....................28

*Street v. New York*, 394 U.S. 576 (1969) ....................28

*Sweezy v. New Hampshire*, 354 U.S. 234 (1957)....................22

*Troxel v. Granville*, 530 U.S. 57 (2000). ....................23

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982). ....................29

*Virginia v. Hicks*, 539 U.S. 113 (2003)....................28

*White v. Pauly*, ___ U.S. ___; 137 S.Ct. 548, 551 (2017) ....................31

*Wright v. City of Euclid, Ohio*, 962 F.3d 852 (2020).................... 6-7

**<u>MICHIGAN CASES</u>**

*Teadt v Lutheran Church Mo Synod*, 237 Mich App 567; 603 NW2d 816 (1999). ....................32

*Williams v Griffin*, 35 Mich App 179; 192 NW2 283 (1971). ....................32

**<u>FEDERAL CONSTITUTION AND STATUTES</u>**

United States Constitution, First Amendment .................... 3, 13, 22, 26-29, 33

United States Constitution, Fourteenth Amendment ....................3

20 U.S.C. § 1681(a) – Title IX,....................3, 32

42 U.S.C. § 1983 ....................6, 13, 23, 31

**<u>MICHIGAN CONSTITUTION AND STATUTES</u>**

Michigan Constitution ....................3

Michigan Constitution of 1963, Article I, Section 5....................3

Michigan Constitution of 1963, Article VIII ....................23

MCL 15.261 *et seq.* ....................3, 8

MCL 15.263 ....................3, 8

MCL 380.1 *et seq* ....................3

MCL 388.10 ....................3, 5, 8, 23

MCL 380-1201 ....................5, 8

**RULES**

Rule 7(a)....1

Rule 8 ....5

Rule 10(c)....1

Rule 12 ....1

Rule 12(b)(6)....1, 5

Rule 12(c).... 1-2

Rule 12(d) .... 1-2

Rule 56 .... 1, 5-6

Rule 56(c)....6

**OTHER CITATIONS**

6 Moore P 56.15(3) ....6

Advisory Committee Notes on 1963 Amendment to Rule 56 ....6

## EXHIBITS

| | | Page |
|---|---|---|
| EXHIBIT 1: | Michigan Code of Educational Ethics | 33 |
| EXHIBIT 2: | DEI Classroom Books | 9 |
| EXHIBIT 3: | Lowel Kids 1st post, July 15, 2021 | 9 |
| EXHIBIT 4: | Lowel Kids 1st post, July 23, 2021 | 9, 16 |
| EXHIBIT 5: | Email, August 14, 2021 and Lowel Kids 1st post, August 12, 2021 | 9 |
| EXHIBIT 6: | Lowel Kids 1st post, September 9, 2021 | 9 |
| EXHIBIT 7: | Various social media posts | 9 |
| EXHIBIT 8: | Emails with Nate Fowler | 10 |
| EXHIBIT 9: | CIPA Compliance emails | 11 |
| EXHIBIT 10: | Lowel Kids 1st post, November 18, 2021 | 11, 16 |
| EXHIBIT 11: | Abby Wiseman classroom | 11 |
| EXHIBIT 12: | Lowel Kids 1st post, April 18, 2022 | 11 |
| EXHIBIT 13: | Lowel Kids 1st post, April 14, 2022 | 11 |
| EXHIBIT 14: | Lowel Kids 1st post, August 18, 2022 | 11 |
| EXHIBIT 15: | School Network News article | 11 |
| EXHIBIT 16: | Lowel Area Schools Memorandum, August 10, 2023 | 12 |
| EXHIBIT 17: | Lowel Kids 1st post, August 10, 2022 | 12 |
| EXHIBIT 18: | Lowel Kids 1st post, September 22, 2022 | 12 |
| EXHIBIT 19: | *What Girls Are Made Of* | 10 |
| EXHIBIT 20: | *What Girls Are Made Of* | 10 |
| EXHIBIT 21: | Facebook post, October 27, 2022 | 15 |
| EXHIBIT 22: | Facebook post, December 14, 2022 | 10 |
| EXHIBIT 23: | Facebook post, June 3, 2023 | 10 |

EXHIBIT 24: Facebook post, January 13, 2023 ....................10
EXHIBIT 25: Facebook post, March 6, 2023 ....................15
EXHIBIT 26: Facebook post March 14, 2023 ....................15
EXHIBIT 27: Facebook post, August 10, 2023 ....................10
EXHIBIT 28: Facebook post, September 8, 2023 ....................10
EXHIBIT 29: "Love is Love" placard and rainbow flags ....................10
EXHIBIT 30: Facebook post, September 29, 2023 ....................10
EXHIBIT 31: Lowel Kids 1st post, November 20, 2023, Arrow Assist Closet ....................12
EXHIBIT 32: Lowel Kids 1st post, March 28, 2024 ....................12
EXHIBIT 33: Lowel Kids 1st post, ....................12
EXHIBIT 34: MEA article ....................12
EXHIBIT 35: Cease and Desist letter, January 19, 2024 .................... 5, 12-13, 15, 17, 22, 26
EXHIBIT 36: Email, January 25, 2024 ....................13
EXHIBIT 37: Steven Gough email, April 16, 2024 ....................13, 21, 27
EXHIBIT 38: Steven Gough email, April 19, 2024 ....................21, 26, 27
EXHIBIT 39: Abby Wiseman email, May 30, 2024 ....................20-21, 26-27
EXHIBIT 40: Policy Manual, Section 9000, Public Comments .................... 10, 20-21, 27
EXHIBIT 41: Social Media Policies ....................27
EXHIBIT 42: Social Media email, February 1, 2023 ....................27
EXHIBIT 43: Notification, September 13, 2024 ....................19
EXHIBIT 44: Nate Fowler email, EduStaff ....................19

This brief is filed in objection and opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [ECF No. 22] and accompanying brief [ECF No. 23].

**GENERAL PREFATORY OBJECTIONS**

Plaintiff objects to Defendants' motion and brief because Defendants have styled their motion and brief under Rule 12(B)(6) where it is really a Rule 56 motion. Defendants have made arguments outside the scope of the pleadings and have referenced other documents which they attached to their brief. With respect to motions filed under Rule 12(b)(6), the following precepts apply:

> (d) Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

[*See* Fed. R. Civ. P. 12(d)].

Rule 7(a)(1) and (2) define a pleading to include both "a complaint" and "an answer to a complaint." And, under Rule 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." District courts have defined a written instrument as "a document evidencing legal rights or duties giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement." *Reguli v. Russ*, 2023 U.S. Dist. LEXIS 167257 at *13 (M.D. Tenn. Aug. 22, 2023) (quoting *Benzon v. Stanley*, 2004 U.S. Dist. LEXIS 2669 at *6 (M.D. Tenn. Jan. 8, 2004)). In addition to matters inside the pleadings, Sixth Circuit case law provides that a court may also consider documents that "[are] referred to in the [plaintiff's] complaint and [are] central to the plaintiff's claim" without converting the Rule 12 motion to one for summary judgment. *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999).

In view of these standards, the Court should begin with the document Defendants attached to their brief: part of the Policy Manual titled "Public Participation at Board Meetings." This document is not a pleading because it is not part of Plaintiff's Amended Complaint or Defendants' answer (which they have not yet filed). Further, Plaintiff does not refer to this document in her Amended Complaint. Thus, the document is by definition "matters outside the pleadings" under Rule 12(d). *See, e.g., Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 502 (6th Cir. 2006) (characterizing two affidavits that the plaintiff submitted in response to a Rule 12(c) motion as matters outside the pleadings). If the Court were to consider them (which is Defendants' clear desire), it would have to convert Defendants' motion to dismiss on the pleadings to one for summary judgment.

Rule 56 Motions are generally disfavored prior to the expiration of discovery. "Typically, when the parties have no opportunity for discovery, denying the Rule 56(f) motion and ruling on a summary judgment motion is likely to be an abuse of discretion." *CenTra, Inc. v. Estrin,* 538 F.3d 402, 420 (6th Cir.2008). In Defendants' brief, they clearly make statement that demonstrate discovery is required. Therefore, the Court can either exclude the exhibit or deny the motion to dismiss as moot and convert it to a motion for summary disposition and allow discovery to start. *Cf. Max Arnold & Sons*, 452 F.3d at 503 ("This Court has found that the mere presentation of evidence outside of the pleadings, absent the district court's rejection of such evidence, is sufficient to trigger the conversion of a Rule 12(c) motion to a motion for summary judgment.").

## FACTS

This case is a case of first impression in Michigan. Defendants want this Court to believe "the law is settled" and that Plaintiff, as a parent has no rights to meet with teachers or be involved in her children's education. Defendants cite case law that is largely irrelevant and easily

distinguished. Rather, this case is about a parent's fundamental right to be involved in her children's education. [ECF No. 20, PageID.289, *First Amended Complaint*, ¶ 1]. This right is conveyed to Plaintiff by the First Amendment, Fourteenth Amendment, Title IX, the Michigan Constitution, the Michigan's Revised School Code being MCL 380.1 *et seq*, which states that parents have the fundamental right to control their children's education,[1] and Michigan's Open Meetings Act being MCL 15.261 *et seq*. *Id.*

Defendants have completely ignored MCL 388.10. They want this Court to ignore it. But this Court cannot ignore the statute because the First Amendment guarantees freedom of speech. *Id.* at ¶ 18. Article I, Section 5 of the Michigan Constitution provides that "Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press." *Id.* at ¶ 19. MCL 388.10 states that parents have a fundamental right to be involved in their children's education:

> **380.10 Rights of parents and legal guardians; duties of public schools.**
>
> Sec. 10.
>
> It is the natural, fundamental right of parents and legal guardians to determine and direct the care, teaching, and education of their children. The public schools of this state serve the needs of the pupils by cooperating with the pupil's parents and legal guardians to develop the pupil's intellectual capabilities and vocational skills in a safe and positive environment.

*Id.* at ¶ 20. This case is also about rights conveyed to Plaintiff by the Revised School Code, which does not permit Defendants to ban Plaintiff from school board meetings or prohibit her public comments. *Id.* at ¶ 22. MCL 15.263 states that "[a]ll meetings of a public body must be open to the public and must be held in a place available to the general public." *Id.* at ¶ 23. The Open

---

[1] MCL 380.10.

Meetings Act does not permit Defendants to ban Plaintiff from school board meetings or prohibit her public comments. *Id.* at ¶ 24.

Plaintiff is the mother of five boys, two who have graduated and three who are currently attending Lowell Area Schools ("LAS") in the 6th, 8th, and 10th grades; and one girl who has graduated from Forest Hills Public Schools. *Id.* at ¶ 38. She is a certified teacher. *Id.* at ¶ 39. She actively attends school board meetings. *Id.* at ¶ 40. She is the moderator on the private Facebook page called "Lowell Kids 1st." *Id.* at ¶ 41. Plaintiff has been critical of certain political statements and positions of Defendants regarding their blatant promotion of diversity equity inclusion, social emotional learning, social justice issues, alternate sex and gender ideologies, and other liberal political ideology (collectively "DEI"), and through manipulative behavior such as giving children access to sexually explicit books and lifestyles that are not age appropriate, including promoting "drag performances" and "pride events" in the community. *Id.* at ¶ 59. Some of the books promoted by Defendants include

- *What Girls Are Made Of* by Elana K. Arnold. *Id.* at ¶¶ 80-84. This book contains explicit sexual nudity and sexual activities; controversial religious commentary, and profanity. *Id.*

- *All Boys Aren't Blue* by Elana K. Arnold. *Id.* at ¶¶ 85-87. This book contains explicit sexual nudity and sexual activities.

- *All My Rage* by Sabaa Tahir. *Id.* at ¶ 89. This book contains graphic and explicit pornography, vile language, rape and incest, and material inappropriate for minors. *Id.*

- *Nineteen Minutes* by Jodi Picout. *Id.* at ¶ 94.

Plaintiff has routinely requested meetings with Defendants. She has routinely tried to get involved in groups within the school to effect change. Her efforts have been rejected. She has posted comments on social media calling out how Defendants promote DEI to children but ignore their own policies. In response to her social media comments and attempts to meet with teachers,

Defendants sent Plaintiff a "cease and desist" letter[2] instructing her that she is not permitted to contact staff without permission. When she requested permission, she was denied. This violated Plaintiff's constitutional rights. Requiring Plaintiff to contact the administrator first, and then always denying the request to speak to a teacher is tantamount to a ban on free speech. This violated MCL 388.10 and 380.1201. Defendants must be held accountable. This Court must deny Defendants' motion to dismiss.

## STANDARD OF REVIEW

**1. Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) rests on whether the plaintiff has properly stated a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff's pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. The pleading is not required to set forth detailed factual allegations, but it does require something more than basic, conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In particular, the pleading must contain allegations that "state a claim to relief that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible when "the pleaded content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**2. Fed. R. Civ. P. 56**

Based on her prefatory objections above, Plaintiff asserts that the proper standard of review should be based on Rule 56. Summary judgment is proper only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Moreover, the Court must view all inferences to be drawn from the underlying facts in the

---

[2] Exhibit 35

light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *General Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1097-98 (6th Cir. 1994). Under Rule 56(c) the moving party always has the initial burden of showing the absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law. See *Adickes v. Kress & Co.*, 398 U.S. 144, 159-60 (1970). *See generally* 6 Moore P 56.15(3).

If, and only if, the initial burden has been supported by additional materials, the non-moving party must then come forward with specific facts which demonstrate to the court that there is a genuine issue for trial. In this case, the ultimate burden of proving the propriety of summary judgment remains on the moving party. *See Adickes*, *supra* at 159-60; See also *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). As the Supreme Court observed in *Adickes*, the Advisory Committee on the 1963 Amendments to Rule 56 expressly rejected the idea that subdivision (e) altered the ordinary standards of proof in a motion for summary judgment: "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." *Adickes*, 398 U.S. at 160, quoting Advisory Committee Notes on 1963 Amendment to Rule 56.

## LAW AND ARGUMENT

### 1. Plaintiff has stated a viable *Monell* claim.

To achieve municipal liability under Section 1983 and *Monell*, Plaintiff must show that Lowell Public School policy, custom, or procedure was the moving force behind the constitutional violation. *Monell v Dep't of Soc. Servs. of City if New York*, 436 U.S. 658, 691 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. In *Wright v. City of Euclid, Ohio*, 962 F.3d 852 (2020) the court articulated that to satisfy *Monell*, the plaintiff "may prove "(1) the existence

of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* at 880 (citing *Jackson v City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019). Plaintiff only needs to be able to prove one of the four parts of the *Monell* test. In this case, Plaintiff can check all the boxes. But we are not at the "proving" stage of this case. We are at the "allegation" stage of this case. Plaintiff has made sufficient allegations to survive Defendants' motion to dismiss.

Lowell Public Schools can be liable for violations caused by enforcement of a policy, *Monell*, 436 U.S. at 694, or by failure to train or supervise. An unconstitutional policy can include implicit policy or gaps in policies. *Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016)."[C]ustoms, in contrast to official policies, do not receive 'formal approval,'" and instead are "'persistent and widespread . . . practices of . . . officials.'" *Monell*, 436 U.S. at 690-691; *Paige v. Coyner*, 614 F.3d 273, 284 (6th Cir. 2010). "[P]olicy or custom does not have to be written law; it can be created 'by those whose edicts or acts may fairly be said to represent official policy.'" *Id.*

Further, Plaintiff can establish a policy or custom claim by a final decision-maker ratifying illegal actions. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citations omitted). "A single decision can constitute a policy, if that decision is made by an official who 'possesses final authority to establish municipal policy with respect to the action ordered.'" *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("More importantly, where action is directed by those who establish government policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.") Defendant Fowler's speech at a school board meeting where he acknowledged the ban on Plaintiff's speech constitutes ratification. Failure-to-train or supervise liability exists where "the need for

more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). . Single-incident liability for failure-to-train claims is available where the need for more or different training is so obvious that a plaintiff's injury is a "highly predictable consequence" of deficient training where situations are likely to reoccur. *Id.* at 390;

Given LAS's blatant policy gaps and failures to supervise and train on certain topics – *inter alia*, permitting clear violations of school policy by some but then banning Plaintiff for her speech – are so obvious that Plaintiff's injuries were a "highly predictable consequence," and a reasonable jury could find that (1) LAS's training was inadequate for the tasks administrators and teachers must perform; (2) the inadequacy was the result of the school's deliberate indifference; and (3) the inadequacy was closely related to or actually caused Plaintiff's injury. *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006). Defendants' motion to dismiss must be denied.

**A. Plaintiff has properly alleged an official unconstitutional policy.**

Plaintiff has alleged policies, customs, or procedures and that violated her rights. Plaintiff detailed that MCL 380.10 gives parents a fundamental right to be involved in their children's education. *First Amended Complaint*, at ¶ 20. MCL 380.1201 states that "[t]he business that the board of a school district is authorized to perform shall be conducted at a public meeting of the board in compliance with the open meetings act, 1976 PA 267, MCL 15.261 to 15.275." The Revised School Code does not permit Defendants to ban Plaintiff from school board meetings or prohibit her public comments. MCL 15.263 states that "[a]ll meetings of a public body must be open to the public and must be held in a place available to the general public." The Open Meetings

Act does not permit Defendants to ban Plaintiff from school board meetings or prohibit her public comments.

Beginning in July 2021, Plaintiff would post messages on Lowell Kids 1st in opposition to certain "equity and inclusion" books that were available at LAS. [3] *Id.* at ¶ 61. The teachers at LAS were given a stack of 77 books on DEI with a color-coded binder labeled "Diversity, Equity & Inclusion Classroom Books" with suggestions on how to implement them into the classroom and use them as "read-alouds" to spur discussion on DEI.[4] *Id.* at ¶ 62. Plaintiff asked Defendant Fowler in a meeting if the books had been "screened for content" before introducing them into the classrooms. His answer was, "no". *Id.* at ¶ 63. Plaintiff posted on social media about the DEI training where staff were referred to as "you white folk" and shamed as racist.[5] *Id.* at ¶ 65. Plaintiff sent a FOIA request to LAS regarding it's "DEI Team." The results revealed that Defendant Fowler was the Director of the DEI Team, meaning he is a decision maker.[6] *Id.* at ¶ 66.

Parents were sharing pictures on Lowell Kids 1st of the DEI signs, stickers, and posters LAS and its teachers were displaying in the classrooms.[7] *Id.* Plaintiff had another meeting with Defendant Nate Fowler to discuss the LAS policies and customs regarding DEI displays. Plaintiff's concerns were ignored.[8] *Id.* at ¶ 68-69. There was a school policy that prohibited political sign displays, but LAS was ignoring it, so long as the signage satisfied their agenda. *Id.* at ¶ 79, 92-93.

---

[3] Exhibit 2

[4] Exhibit 3

[5] Exhibit 4

[6] Exhibit 5

[7] Exhibit 6

[8] Exhibit 7

Plaintiff continued to post on social media about books many parents deemed inappropriate for children. Despite raising these issues with Defendants in-person, she was ignored. *Id.* at ¶ 69.

Plaintiff always followed the appropriate chain of command.[9] *Id.* at ¶ 124. She tried to get involved with committees and with key leadership within LAS. She was rebuked and ignored. *Id.* at ¶ 70. She tried to become a member of the DEI Team, the LAS Parent Advisory Committee, the Reproductive Health Committee, a.k.a. Sex Education Advisory Board/SEAB), and more. Her efforts were always rejected. *Id.*

Plaintiff attempted to address concerns related to children's access to adult material and sexually explicit material within the physical and online libraries of LAS. *Id.* These include *What Girls Are Made Of*,[10] *All Boys Aren't Blue*,[11] *All My Rage*,[12] and *Nineteen Minutes*.[13] *Id.* at ¶¶ 80-89, 94. These books include explicit pornography, vile language, rape and incest, and material inappropriate for minors. On August 10, 2022, drew attention to the new Bushnell Elementary librarian wearing clothing that violates school policy. *Id.* at 92.[14] LAS has done nothing to enforce the school policies while allowing teachers and staff to promote "social justice issues, alternate sex and gender ideologies, and other topics that many parents would feel are best left to the home."[15] *Id.* at ¶ 93. Plaintiff attempted to work with the LAS Library Media Director, Christine Beachler, as well as the LAS Technology Director, Eric Stanek, in charge of LAS CIPA Compliance (Children's Internet Protection Act), to protect the children from early exposure to adult and/or

---

[9] Exhibit 40

[10] Exhibits 19-20

[11] Exhibit 22

[12] Exhibits 23 and 24

[13] Exhibit 30

[14] Exhibit 27

[15] Exhibits 28-29

age-inappropriate content. She was rejected, rebuked, and ignored.[16] *Id.* Plaintiff contacted Eric Stanek directly. He stated that his hands were tied by the administration. He told Plaintiff that Defendant Christine Beachler was the person who would be "able to address any concerns of inappropriate content."[17] *Id.* at ¶ 71. She was one of the decision-makers.

On November 18, 2021 Plaintiff learned about mandatory staff DEI training put on by Defendant Wiseman, another decision-maker. The virtual presentation depicted the "Black Lives Matter/BLM" fist and LGBTQ symbolism.[18] Defendant Wiseman displays the LGBTQ rainbow flag on her door at the school; in clear violation of school policy. Nobody has made her remove these displays even though they are political symbols.[19] *Id.* at ¶ 72-74.

On April 18, 2022, Plaintiff created a t-shirt with the words "Lowell Red Arrow PRIDE" and the American Flag.[20] For reference, the official nickname of Lowell High School is the "Lowell Red Arrows."[21] Plaintiff's children tried to distribute the t-shirts at school free of charge. They were not allowed, even though the school promoted a t-shirt with "Red Arrow Pride" with the term "Red Arrow" displayed in multi-color rainbow of the LGBTQ flag.[22] *Id.* at ¶ 75.

On August 18, 2022, Plaintiff posted about an article promoting Defendant Wiseman and her statement that she "collect[s] the children." Defendant Wiseman clearly displays her sexuality

---

16 Exhibit 8

17 Exhibit 9

18 Exhibit 10

19 Exhibit 11

20 Exhibit 12

21 https://redarrowsports.com/

22 Exhibit 13

(lanyard, sticker on ID badge, her watch, pronouns in emails), yet LAS does nothing.[23] [24] *Id.* at ¶ 76. These displays clearly promote political beliefs, religious beliefs, and/or other controversial issues in clear violation of school policy. Defendants have not required Wiseman to remove these displays.[25] *Id.* at ¶ 77. Teachers routinely where Black Lives Matters shits without being required to remove them.[26] Defendant Wiseman gives children stickers and pins as rewards for good behavior.[27] The stickers and pins promote DEI; yet LAS does nothing. *Id.* at ¶ 79.

In November of 2023, Plaintiff discovered that Defendants were pushing the "Arrow Assist Closet", which encourages students to enter the "closet" and change into alternate gender clothing using chest binders. *Id.* at ¶ 95. Defendants keep this information from parents while their children are at a school.[28] *Id.* Instead, LAS promotes teachers like Sarah Ellis who displays the LGBTQ rainbow flag in her classroom in clear violation of school policy.[29] *Id.* at ¶ 96-97. This is the same teacher who created a shrine in her classroom to honor the author of the book *All Boys Aren't Blue*.[30] *Id.* at ¶ 98.[31] Plaintiff pointed this out on social media. *Id.*

Defendants were upset at Plaintiff for her social media posts. In response they sent her a cease-and-desist letter [Ex 35] telling her she cannot contact staff or teachers "without permission

---

[23] Exhibits 14-15

[24] https://www.schoolnewsnetwork.org/2021/11/01/from-coaching-to-educator-shes-inspired-by-listening-to-students-and-an-empowering-playlist/

[25] Exhibit 16

[26] Exhibit 17

[27] Exhibit 18. The school policy states that "clothing promoting political beliefs, religious beliefs and/or any other controversial issues are not to be worn by staff at any time

[28] Exhibit 31

[29] Exhibit 32

[30] Exhibits 33-34

[31] https://mea.org/lowell-art-teachers-paintings-honor-school-librarians-courage/

from the involved building principal of the superintendent." *Id.* at ¶ 101. When she asked for permission, she was denied. This is a ban on free speech. These actions, customs, and policies, implemented by Defendants were adopted by the school board and enforced. Lowell Area School is responsible for these actions and resulting injury under § 1983. *Id.* at ¶ 102. On January 25, 2024, Plaintiff sent an email to Defendant Gough asking "Did you approve of this letter which I recently received from Mr. Gough? I would appreciate a prompt response."[32] Mr. Gough responded, "I did" which proves he has final decision-making authority. *Id.* at ¶ 104.

This violates Plaintiff's fundamental right to free speech and Michigan law granting parents the right to participate in their children's education. *Id.* at ¶ 25. No school district should violate a parents constitutional and statutory rights, especially when it means abandoning a common-sense practice that long protected every parent's access to their children's education. Yet the Defendants have taken precisely these actions in this case. *Id.* at ¶ 26. This policy set forth by Defendants is an illegal policy or custom. Defendants are not permitted to silence Plaintiff in the manner described. Nevertheless, is has been enacted as an official policy made and enforced by Defendants who have final decision-making authority. Based on the facts set forth in the Complaint, Defendants have demonstrated a custom of tolerance or acquiescence of federal violations. *Id.* at ¶ 109. On April 8, 2024, Defendant Gough stood before the school board and announced that he is "the principal." He stated he has "nearly 30 years in education." *Id.* at ¶ 107. He wanted to "provide context and clarity." *Id.* He then very clearly acknowledged the cease-and-desist letter. [Ex 35]. He stated

> If you read the letter that she presented as evidence it requests that she stop directly referencing staff in her social media because of her repeated posts that staff perceives as derogatory, disparaging, and disrespectful. The only directive in that letter is that she have no contact with staff prior to permission from the involved

[32] Exhibits 36 and 37

> principal or superintendent so that we can protect our staff from any further inappropriate behavior. She claims that we are violating her First Amendment right by asking that she treat others will decency, dignity, and respect in public her discourse. There is no First Amendment right to bullying, harassment, or misinformation.
>
> * * * *
>
> Over the past several years it has become a regular occurrence for this parent to attack staff members in her public discourse through social media and public comment and the parent's efforts publicly demean and diminish the district that she chooses to send her children to. The staff members that she has targeted feel disrespected and much of the behavior that I can see on social media appears disrespectful to me.

*Id.* Defendant Gough stated that Plaintiff was silenced because staff members "feel disrespected" and her comments "appear disrespectful." *Id.* Even though this is a subjective standard, Defendant Gough officially adopted and promulgated the rules at the school board meeting. *Id.* at ¶ 110. the policy and custom established through the cease-and-desist letter and articulated at the School Board meeting are clear formal rules of understanding, committed to writing, that were intended to and did establish a fixed plan of action to be followed under similar circumstances and over time.

### B. <u>Plaintiff has properly alleged actions by officials with final decision-making authority</u>.

Plaintiff attempted to be involved in the DEI Team, which was the decision-making authority for putting DEI books into the schools. *Id.* at ¶ 66. On September 21, 2021, Plaintiff had a meeting at the LAS administration building with Nate Fowler. *Id.* at ¶ 68. Plaintiff attempted to become involved in various committees and with various key leadership within the School District. She was always rejected. Eric Stanek told Plaintiff that Christine Beachler was the person who would be "able to address any concerns of inappropriate content." *Id.* at ¶ 71. Plaintiff told Defendants Fowler and Gough that some of the DEI books contained explicit sexual nudity and sexual activities; controversial religious commentary, and profanity. *Id.* at ¶ 81. Plaintiff

enlightened them as to a Facebook group called "Mary in the Library" which highlights concerning books within our nationwide schools, and contains lists of concerning books found within specific schools. Plaintiff invited them to join the group, so that they could see some of the concerns for themselves. *Id.* at ¶ 82. Mr. Gough did join "Mary In the Library", which proves that he WAS aware of the concerns and lists of books in the libraries which were concerning to many parents.[33] Nevertheless, he did nothing about it other than help implement a policy in which he had final decision-making authority to prohibit Plaintiff's free speech and violate her constitutional rights. *Id.* at ¶ 83.

On March 6, 2023, Plaintiff posted a comment that "Christine Beachler and Steve Gough's idea of 'fixing' our sexually explicit book pandemic in our schools is to label sexually explicit books for 'Seniors-Only' and that by doing so, it somehow magically means all Seniors are adults."[34] *Id.* at ¶ 90. Defendants Fowler, Gough, and Beachler had final decision-making authority as to which books are in the library. In response to her speech, Defendant Gough sent Plaintiff a cease-and-desist letter. [Ex 35]. Plaintiff sent him an email asking if he approved the letter before it was sent to her. He replied "I did." *Id.* at ¶ 104. This proves he has final decision-making authority. *Id.*

On March 11, 2024, at a School Board meeting, Plaintiff asked the School Board if they were aware that Mr. Fowler and Mr. Gough had silenced her right to talk and meet with teachers. Plaintiff asked the School Board to intervene. The School Board deferred to Defendants, including but not limited to Mr. Fowler, Mr. Gough, Ms. Wiseman, and Ms. Beachler, who have the final decision-making authority. *Id.* at ¶ 106. On April 8, 2024, at a School Board meeting, Defendant

---

[33] Exhibit 21

[34] Exhibits 25 and 26

Gough read a statement which acknowledge that he has final decision-making authority. *Id.* at ¶ 107. This policy set forth by Defendants is an illegal policy or custom. Defendants are not permitted to silence Plaintiff in the manner described. Nevertheless, it has been enacted as an official policy made and enforced by Defendants who have final decision-making authority. This policy set forth by Defendants is an illegal policy or custom. It has been enacted as an official policy made and enforced by Defendants who have final decision-making authority. The policy was created to silence Plaintiff without proper training or supervision. Defendants have demonstrated a custom of tolerance or acquiescence of federal violations. *Id.* at ¶ 164.

**C. <u>Plaintiff has properly alleged a policy of inadequate training</u>.**

Plaintiff has properly alleged a policy with inadequate training. On July 23, 2021, Plaintiff posted on social media about a mandatory DEI training purchased by the School District, put on virtually on March 4, 2021 by "Brigham Consulting." The owner, Nadia Brigham, forced staff to keep their cameras on during the training, often referring to them as, "you white folk", and shaming them for being "racist". A text message attached from a School District teacher corroborates this allegation.[35] *Id.* at ¶ 65. On November 18, 2021 Plaintiff posted on social media about the mandatory staff DEI training put on by Defendant Wiseman. The title screen of the virtual presentation depicts the "Black Lives Matter/BLM" fist and LGBTQ symbolism.[36] Defendants have not required Wiseman to remove these displays. *Id.* at ¶ 72.

Not only was the DEI training (which Plaintiff discussed) inadequate, but when Plaintiff commented on that training, Defendants implemented a policy against her without adequate training or supervision. *Id.* at ¶ 109. Indeed, the facts in the Complaint demonstrate that Defendants

---

[35] Exhibit 4

[36] Exhibit 10

were targeting Plaintiff to silence her and violate her rights because of how her speech made them feel. Defendants provided no training to enforce these policies against Plaintiff. Rather, the policies and statements demonstrate that the School District held a deliberate indifference which caused Plaintiff's injury. *Id.* at ¶ 111. Defendants knew or should have known that the creation and enforcement of their policies and customs, including by sending the cease-and-desist letter [Ex 35], would silence Plaintiff and violate her rights. The risk of the constitutional violation arising because of the inadequate training or deliberate indifference is plainly obvious. *Id.* at ¶ 134. Plaintiff asked Defendant Gough if he approved the cease-and-desist letter. [Ex 35]. He said, "I did." *Id.* at ¶ 104. Based on this question alone, Defendants were on notice that their training was deficient or they were deliberately indifferent, which was likely to cause injury to Plaintiff, including violating her rights to speak to teachers; yet Defendants ignored it. *Id.* at ¶ 138. Indeed, Defendants could have established a policy and trained staff and personnel regarding Plaintiff's concerns. Defendants routinely violate their own policies. They continuously display political symbols in violation of school policy. Yet there is no enforcement of the policy. However, when Plaintiff spoke against these policies, the Defendants banned her from speaking to staff. This demonstrates a custom of tolerance or acquiescence of federal violations. They provided no training to enforce these policies against Plaintiff. Rather, the policies and statements demonstrate that the School District held a deliberate indifference which caused Plaintiff's injury. *Id.* at ¶ 164. Instead of providing training to handle recurring situations, Defendants resorted to banning Plaintiff from speaking to teachers, which demonstrates a clear violation of federal rights. *Id.* at ¶ 184.

**D. Plaintiff has properly alleged a custom of tolerating constitutional violations.**

Plaintiff has demonstrated that Defendants routinely violate their own policies. They allow teachers and staff to display political symbols. On the other hand, they banned Plaintiff when she

spoke against these violations. Defendants have demonstrated a policy of tolerating federal rights violations. There exists a clear and persistent pattern of violation of civil rights and illegal activity; namely preventing Plaintiff from speaking to teachers. Plaintiff placed Defendants on notice. Nevertheless, Defendants have approved of the unconstitutional conduct such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction. Finally, Defendants' customs and policies are the moving force or direct causal link in the constitutional deprivations. *Id.* at ¶¶ 139, 188.

**2. <u>Plaintiff has properly pleaded claims against the individual Defendants as a matter of law.</u>**

Defendants acknowledge that Plaintiff has sufficiently alleged personal involvement of Mr. Gough; but "has failed to allege personal involvement of any Defendants with the exception of Mr. Gough." *Defendants' Brief* at 20. Plaintiff properly alleged that all Defendants are all people with decision-making authority, whether as Superintendents, Principals, or other positions of authority. They set the policy, customs, and procedures for LAS. *Id.* ¶¶ 52-58. They implement the policies. *Id.* They collectively banned Plaintiff from speaking with teachers and staff. *Id.*

**A. <u>Plaintiff has pleaded factual allegations against Defendant Fowler</u>.**

Defendant Fowler has his hands all over this case, the policies and customs, and the actions taken against Plaintiff. Defendant Fowler is the current Superintendent. *Id.* at ¶ 52. He has final decision-making authority. *Id.* Fowler accepted the donation of "equity and inclusion" books to the elementary school. *Id.* at ¶ 61. Plaintiff has a private meeting with Fowler regarding the DEI books. *Id.* at ¶ 63. Plaintiff discussed the DEI Team with Fowler. *Id.* at ¶ 56. Through a FOIA request, Plaintiff discovered that Fowler is the Director of the DEI Team. *Id.* at ¶ 66. Plaintiff had another meeting with Fowler on September 21, 2021. *Id.* at ¶ 68. She met with Fowler and Gough again in September 30, 2022 to discuss the DEI books. *Id.* at ¶ 80. Plaintiff raised the concern that

to be CIPA complaint and qualify for discounts related to CIPA for school utilities, the School District must attest to the fact that they are not providing inappropriate material for minors over the internet. This was a definite concern. *Id.* at ¶ 80-81. On March 11, 2024, at a School Board meeting, Plaintiff asked the School Board if they were aware that Mr. Fowler and Mr. Gough had silenced her right to talk and meet with teachers. Plaintiff asked the School Board to intervene. The School Board deferred to Defendants, including but not limited to Mr. Fowler, Mr. Gough, Ms. Wiseman, and Ms. Beachler, who have the final decision-making authority. *Id.* at ¶ 106.

On September 13, 2024, Plaintiff was not allowed to substitute teach even though she was approved and met the qualifications. *Id.* at ¶ 129. Plaintiff is a certified teacher. There are substitute teacher shortages every day in the School District. *Id.* On September 13, 2024, Defendant Fowler notified Plaintiff that "[b]ased on our technology use policy and concerns about creating a disruption to the school environment, we do not need your services as a substitute teacher."[37] *Id.* at ¶ 130.

### B. <u>Plaintiff has pleaded factual allegations against Defendant VanderMeulen, Defendant Strotheide</u>

Defendant VanderMeulen is the Assistant Superintendent. *Id.* at ¶ 52. Defendant Strotheide is the Assistant Principal of Lowell Area High School. *Id.* at ¶ 55. In their capacity, they have implemented policies in which (1) the School District will promote DEI, SEL, social justice issues, alternate sex and gender ideologies, and other liberal political ideology, and through manipulative behavior such as giving children access to sexually explicit books and lifestyles that are not age appropriate; (2) Plaintiff is not permitted to make any social media posts that reference any LAS employee; and (3) Plaintiff is not permitted to have any contact with any staff without prior

[37] Exhibits 43 and 44

permission from the involved building principal or the superintendent. They have final policymaking authority for The School District in circumstances not otherwise provided for in the School District Bylaws and Policies. *Id.* at ¶ 52, 55.

### C. <u>**Plaintiff has pleaded factual allegations against Defendant Wiseman**</u>.

Defendant Wiseman is the Principal at Lowell Area Middle School. *Id.* at ¶ 56. She has final decision-making authority for Lowell Area Middle School with respect to the day-to-day enforcement of the School District's policies, including the adopted policy described in the Complaint. *Id.* Wiseman is the person who put on the DEI training where Black Lives Matter and LCBTQ symbols were displayed. *Id.* at ¶ 72. She displays the symbols on her door at the school. *Id.* at ¶ 73. Even though she oversees the school, she allows herself to do this in violation of school policy. *Id.* Wiseman is the teacher who stated that she "collect[s] the children." *Id.* at ¶ 76. She wears LGBTQ rainbows on her lanyard and identification badge. *Id.* at ¶ 77, 79. She gives children DEI stickers and pins as rewards. *Id.* at ¶ 79. Wiseman implemented and promotes the "Arrow Assist Closet" at the school. *Id.* at ¶ 95. When Plaintiff approached her with questions, she refused to answer. *Id.* On March 11, 2024, at a School Board meeting, Plaintiff asked the School Board if they were aware that Mr. Fowler and Mr. Gough had silenced her right to talk and meet with teachers. Plaintiff asked the School Board to intervene. The School Board deferred to Defendants, including but not limited to Mr. Fowler, Mr. Gough, Ms. Wiseman, and Ms. Beachler, who have the final decision-making authority. *Id.* at ¶ 106.

Significantly, on May 30, 2024, Plaintiff was denied the right to have a meeting with a teacher of one of her children.[38] This action was taken directly by Defendants Wiseman and Acheson. Plaintiff was following what she knew to be the proper chain of command as set forth in

---

[38] Exhibit 39

LAS Board Policy #9130.[39] Defendants are intervening and blocking Plaintiff's right to communicate directly with teachers.[40] *Id.* at ¶ 124. The instruction that Plaintiff first "request" a meeting when the "request" is always denied is the same as a ban.

**D. <u>Plaintiff has pleaded factual allegations against Defendant Acheson</u>.**

Defendant Acheson is the Assistant Principal of Lowell Area Middle School. *Id.* at ¶ 56. He has final decision-making authority for Lowell Area Middle School with respect to the day-to-day enforcement of the School District's policies, including the adopted policy described in the Complaint. *Id.* Significantly, on May 30, 2024, Plaintiff was denied the right to have a meeting with a teacher of one of her children.[41] This action was taken directly by Defendants Wiseman and Acheson.

**E. <u>Plaintiff has pleaded factual allegations against Defendant Beachler</u>.**

Defendant Beachler is the LAS Library Media Director. *Id.* at ¶ 58. Beachler has final policymaking authority for Lowell Area Middle School with respect to the day-to-day operations of the library and enforcement of the School District's policies, including the adopted policy described in the Complaint. *Id.* Plaintiff attempted to work with Beachler regarding the DEI books in the school. *Id.* at ¶ 70. Erik Stanek acknowledged that Christine Beachler was the decision-maker who would be "able to address any concerns of inappropriate content." *Id.* at ¶ 71. Indeed, Beachler oversees the policy and customs regarding the DEI books. *Id.* Beachler is the person who stated that the DEI books are only available to seniors, which is not true. *Id.* at ¶¶ 85, 90-91. On March 11, 2024, at a School Board meeting, Plaintiff asked the School Board if they were aware

---

39 <u>https://go.boarddocs.com/mi/lowell/Board.nsf/Public?open&id=policies#</u>
Exhibit 40

40 Exhibits 37-40

41 Exhibit 39

that Mr. Fowler and Mr. Gough had silenced her right to talk and meet with teachers. Plaintiff asked the School Board to intervene. The School Board deferred to Defendants, including but not limited to Mr. Fowler, Mr. Gough, Ms. Wiseman, and Ms. Beachler, who have the final decision-making authority. *Id.* at ¶ 106.

**3. Plaintiff has alleged an underlying constitutional violation.**

Plaintiff has clearly alleged an underlying constitutional violation. Plaintiff has the right to free speech. "First Amendment freedoms are most in danger when the government seeks to control thought or to justify its laws for that impermissible end." This is a case where Defendants have attempted to control Plaintiff's conduct. There is no question that Defendants sent Plaintiff a cease-and-desist letter [Ex 35] telling her she cannot communicate with teachers and staff without prior approval. Defendant Fowler then stated at a school board meeting that this policy was put in place because "[t]he staff members that she has targeted *feel* disrespected and much of the behavior that I can see on social media *appears* disrespectful to me." "The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American school.'" *Healy v. James*, 408 U.S. 169, 180 (1972) (quoting *Shelton v. Tucker*, 364 U.S. 476 (1960)). The core principles of the First Amendment "acquire a special significance in the university setting, where the free and unfettered interplay of competing views is essential to the institution's educational mission." *Doe v. University of Michigan*, 721 F. Supp. 852, 863 (E.D. Mich 1989) (citing *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967)). "Teachers and students must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding; otherwise, our civilization will stagnate and die." *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957). "The principle that 'the vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools' . . . is not confined to the supervised and ordained discussion which takes place in the classroom" but extend throughout a school's campus and community. *Solid Rock Foundation*

*v. Ohio State University*, 478 F. Supp. 96, 102 (S.D. Ohio 1979). Put simply, "First Amendment protections [do not] apply with less force on college campuses than in the community at large." *Healy*, 408 U.S. at 180. "The mere dissemination of ideas—no matter how offensive to good taste—on a state university campus may not be shut off in the name alone of 'conventions of decency.'" *Papish v. Bd. of Curators of Univ. of Mo*., 410 U.S. 667, 670 (1973). Indeed, "the point of all speech protection . . . is to shield just those choices of content that in someone's eyes are misguided, or even hurtful." *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc*., 515 U.S. 557, 574 (1995). Nevertheless, Defendants silenced Plaintiff. They told her she cannot speak to teachers and staff. This demonstrates the underlying constitutional violation.

**A. Plaintiff has a right to communicate with LAS staff.**

Defendants completely ignore MCL 380.10 which states that "parents have a fundamental right to be involved in their children's education." Article VIII of The Michigan Constitution states that "education shall forever be encouraged." To state a cause of action under 42 U.S.C. § 1983, Plaintiff must demonstrate "(a) deprivation of a right secured under the Constitution or federal law; and (b) that deprivation was caused by a person acting under color of state law." *Alkire v. Irving*, 330 F.3d 802, 813 (6th Cir. 2003). The Supreme Court has held that the right of parents "to make decisions concerning the care, custody, and control of their children" and "to direct the upbringing and education of children under their control." *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000).

Defendants rely heavily (if not entirely) on *Gaines-Hanna v. Farmington Pub. Sch. Dist.*, No. 04-74910, 2007 WL 1201567, at *2 (E.D. Mich., April 20, 2007), an unpublished opinion from the Eastern District of Michigan that was not appealed after the court dismissed the case on a motion for summary judgment after discovery. But *Gaines-Hanna* is a much different case, despite Defendants' arguments. In *Gaines-Hanna*, the plaintiff sued 62 teachers, coaches, counselors, and school administrators alleging violations over 10 years. Many of the claims were

barred by the statute of limitations. The plaintiff was pro-se. The complaint alleged violations regarding plaintiff's twin children from kindergarten to Grade 12. The facts demonstrated that plaintiff volunteered almost daily. The plaintiff did not want to sign in when she entered the building, which plaintiff claimed was discriminatory. Plaintiff had many meetings the teachers, sometimes daily. The plaintiff tried to direct the classroom assignments for her children and the seating chart. Plaintiff made many complaints about her children being bullied. The plaintiff did not consent to her children being searched for lice. She demanded her children be transferred to different classes. She made complaints of discrimination and segregation to the Civil Rights District Executive. The plaintiff alleged assault, mistreatment, and isolation. The plaintiff alleged segregation of white and black students.

That is not our case. In *Gaines-Hanna*, the school district sent the plaintiff a letter telling her that the district could no longer meet her demands:

> The district can no longer devote the amount of time requested by you for issues which are unreasonable . . . . that I am informed, for example, that you have declared that a school guidance counselor may not meet with your daughter for ten minutes without you being present. Similarly, you have refused to deal with Ms. Linda Fox or Dr. Ron Jones. Other unacceptable behaviors include your frequent demands for immediate responses to your requests, other demands that you receive responses "in writing," and requests that school personnel or the district conduct investigations or hearings. Likewise, I am informed that at other times you have made inappropriate demands, intemperate remarks and personal attacks toward school personnel . . . .

*Gaines-Hanna* is distinguished because it involved the plaintiff's conduct while on school property. The *Gaines-Hanna* court ruled that "[t]he constitution does not require that teachers communicate with parents on terms imposed by the parents." The court did not say that teachers are not required to communicate. In our case, Plaintiff is not harassing people daily on school property. She has not threatened them. She has asked to meet with teachers and has been denied. Defendants in this case have refused to communicate entirely *based* on her comments on social

media, not based on her daily activity at the school. Plaintiff has not imposed terms for the meeting, she just wants a meeting.

**B. <u>Plaintiff has alleged a claim for "banned" speech or prior restraint</u>.**

Defendants incorrectly argue that the cease-and-desist letter was not a ban on speech. Defendants claim that Defendant Gough merely "requested" that Plaintiff "refrain" from making comments about staff on social media. This is false. They also point to Defendant Gough's comments at the April 2024 school board meeting where he stated "[t]he only directive in that letter is that she has no contact with staff prior to permission from the involved principal or superintendent."

But that mischaracterizes the letter. The letter states that she must "immediately cease and desist from any reference to any LAS employee on social media and/or other public communication platforms." That is a ban on speech. But there's more which Defendants ignore in their brief. The letter continues "[f]ailure to comply with this request will be perceived as a deliberate and inappropriate act against the involved staff and the District." the letter demonstrated there is a punishment for her speech. "As a result, I am directing that you have no contact with our staff without prior permission from the involved building principal or the superintendent." This is a ban and prior restraint. "Failure to comply with this directive may result in further restrictive action including but not limited to an order of no trespass prohibiting your presence at all school functions." So, there will be more punishment if Plaintiff continues to speak her mind.

Defendants fail to discuss in their brief what happened next. On March 11, 2024, at a School Board meeting, Plaintiff asked the School Board if they were aware that Mr. Fowler and Mr. Gough had silenced her right to talk and meet with teachers. Plaintiff asked the School Board to intervene. The School Board deferred to Defendants, including but not limited to Mr. Fowler, Mr. Gough, Ms. Wiseman, and Ms. Beachler, who have the final decision-making authority. On

April 8, 2024, at a School Board meeting, Defendant Gough acknowledged and confirmed the policy, [42] According to this policy, Plaintiff is not permitted to speak at every school board meeting or talk to staff or teachers *unless* she has special permission from the superintendent or principal. The cease-and-desist letter [Ex 35] is a direct action to silence Plaintiff. The School District is not permitted to ban a parent from contact with district employees based on speech they *perceive* to be "derogatory, disparaging, and disrespectful." Further, the statements by Defendant Gough demonstrate a complete misunderstanding of the First Amendment and demonstrate the clear intent to violate Plaintiff's constitutional rights. *First Amended Complaint* at ¶ 108.

On April 12, 2024, Plaintiff attempted to contact the teacher of one of her children due to a concern she had with the curriculum in his classroom. Mr. Jeff Larsen, AP English Literature and Composition teacher, refused to respond to the Plaintiff's email, and instead forwarded it to Defendant Gough, who responded to the Plaintiff via email on April 16, 2024 with, "you should not have direct contact with staff without prior permission from the involved principal."[43] *Id.* at ¶ 121. When Plaintiff attempted to contact the teacher again, Principal Gough again responded to the Plaintiff via email on April 19, 2024 with, "I understand that you have made direct contact with Mr. Larsen again even though you have now been twice notified that you should not have direct contact with staff without prior permission form the involved principal. I am also aware that you are already posting to social media in an effort to generate artificial outrage in order to pressure the District and/or this staff member into imposing your personal, cultural and political views onto other people's children."[44] *Id.* at ¶ 122. Prior to April 12, 2024, the Plaintiff had had no negative

---

42 https://www.youtube.com/live/VdNCmm1q3fY at [28:50 – 31:40]

43 Exhibit 39

44 Exhibit 38

interactions with Mr. Larsen which would give him any reason not to respond to a parent request for communication. *Id.* at ¶ 123. Plaintiff was never permitted to meet with Mr. Larsen. So, indeed, there is a ban on her interaction with teachers.

Then on May 30, 2024, Plaintiff completely complied with the school's directions. She requested a meeting with one of the teachers, Ms. Guille. In response, Defendant Wiseman denied the request.[45] This action was taken directly by Defendants Wiseman and Acheson to deny Plaintiff her constitutional right. She was following what she knew to be the proper chain of command as set forth in LAS Board Policy #9130.[46] Defendants are intervening and blocking Plaintiff's right to communicate directly with teachers.[47] *Id.* at ¶ 124. To silence parents who speak out against Defendants' policies, including their policies on DEI, SEL, sex, social justice issues, alternate sex and gender ideologies, and liberal political ideology, Defendants have published a "Social Media Policies" document which states that parents will be blocked from social media sites if the post is something the moderator deems not respectful to others.[48] *Id.* at ¶ 125. Indeed, in an email to Plaintiff, Defendants have acknowledged that they had blocked Plaintiff more than a year and a half. This violated Plaintiff's First Amendment rights.[49] *Id.* at ¶ 126.

It is disingenuous for Defendants to argue there is no "ban" on Plaintiff's speech by claiming that she just needs to seek permission from the superintendent but then when she seeks that permission to deny her request. The First Amendment prohibits State officials at schools from

---

45 Exhibit 39

46 Exhibit 40 https://go.boarddocs.com/mi/lowell/Board.nsf/Public?open&id=policies#

47 Exhibit 37-40

48 Exhibit 41

49 Exhibit 42

adopting regulations or policies that outlaw speech when the policy "is so broad as to chill the exercise of free speech and expression." *Dambrot v. Cent. Michigan University*, 55 F.3d 1177, 1182 (6th Cir. 1995). "Because First Amendment freedoms need breathing space to survive, a state may regulate in the area only with narrow specificity." *Gooding v. Wilson*, 405 U.S. 518, 522 (1972). A public school must carefully craft its policy "to punish only unprotected speech and not be susceptible of application to protected expression." *Id.* "'[I]f it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection.'" *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 243 (6th Cir. 2015). Moreover, humor, satire, and parody play an important role in a democratic society, and "it is clear that our political discourse would have been considerably poorer without them." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 55-56 (1988). It is thus "firmly settled" that "the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." *Street v. New York*, 394 U.S. 576, 592 (1969). A policy is unconstitutionally overbroad if "a substantial number of instances exist in which the [policy] cannot be applied constitutionally." *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013). The Court must find such regulations facially unconstitutional because "the threat of enforcement of an overbroad [policy] may deter or 'chill' constitutionally protected speech," as "[m]any persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-case litigation, will choose simply to abstain from protected speech, harming not only themselves but society as a whole, which is deprived of an uninhibited marketplace of ideas." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003). Moreover, policies "that prohibit speech on the basis of listener reaction alone are unconstitutional both in public high school and university settings." *Bair v. Shippensburg Univ.*, 280 F. Supp. 2d 357, 369 (M.D. Pa. 2003). The government may not prohibit speech "based solely on the emotive impact that its

offensive content may have on a listener." *Saxe v. State College Area School Dist.*, 240 F.3d 200, 209 (3d Cir. 2001) (Alito, J.). This is exactly what we have here, the school officials have implemented a policy and silenced Plaintiff because they "feel disrespected" based on what they "perceive[] as derogatory, disparaging, and disrespectful." See Defendant Gough's public comments, *supra*.

**C. <u>Plaintiff has stated a claim for due process void for vagueness</u>.**

Plaintiff has stated a valid claim for vagueness. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "[T]he vagueness doctrine has two primary goals: (1) to ensure fair notice to the citizenry and (2) to provide standards for enforcement [by officials]." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 551 (6th Cir. 2007). "With respect to the first goal, . . . [a] statute which either forbids or requires the doing of an act in terms so vague that [individuals] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Id.* (citation omitted). "With respect to the second goal, . . . if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to [officials] for resolution on an ad hoc and subjective basis." *Id.* (citation omitted). This principle of clarity is especially demanding when First Amendment freedoms are at stake. If the challenged law "interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982). "Certainty is all the more essential when vagueness might induce individuals to forego their rights of speech, press, and association for fear of violating an unclear law." *Scull v. Commonwealth of Va. ex rel. Comm. on Law Reform and Racial Activities*, 359 U.S. 344, 353 (1959); see also *Leonardson v. City of East Lansing*, 896 F.2d 190, 195-96 (6th Cir. 1990)

(considering whether the challenged policy "provides fair notice of the standard of conduct to which a citizen is held accountable," or instead "leaves the definition of its terms to law enforcement officers, and thereby invites arbitrary, discriminatory, and overzealous enforcement"). The Defendants' prohibitions on "bullying, harassment, or misinformation" are unconstitutionally vague because they impose potentially severe penalties (including banning a parent from speaking to teachers or administrators about their child's education) based on terms so vague that parents, students, or community members of ordinary intelligence have no clear or meaningful standards or guidance about the line between permissible and prohibited conduct. The absence of any clear or meaningful standards for "bullying, harassment, or misinformation" results in a serious risk that these prohibitions will be enforced in an arbitrary or discriminatory manner, or will be used to target speech based on the viewpoint the speaker expresses. Indeed, Defendants' policy has been enforced in an arbitrary or discriminatory manner and has been used to target speech based on the viewpoint Plaintiff has expressed; all based on what the listener *perceived* as "derogatory, disparaging, and disrespectful." Due to the inherent vagueness of the prohibitions on "bullying, harassment, or misinformation" members of the community (including parents, students, administrators, or teachers) will choose not to speak about certain topics, or to speak less forcefully, to avoid the risk of an investigation or punishment for their speech. Defendants adopted these unconstitutionally vague prohibitions under color of state law.

**4. The individual Defendants are not entitled to qualified immunity.**

In evaluating qualified immunity, courts ask two questions: (1) "whether the facts that a plaintiff has … shown make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court must take the facts "in the light most favorable to the party asserting the injury." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Plaintiff has already

established that indeed her constitutional rights were violated, as discussed above. The first prong is satisfied. For the second prong, "[t]his Court's case law do[es] not require a case directly on point for a right to be clearly established." *White v. Pauly*, ___ U.S. ___; 137 S.Ct. 548, 551 (2017) (per curiam). See also *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015); *Baynes v. Cleland*, 799 F.3d 600, 613 (6th Cir. 2015). *Monell* recognized that "it has been clear that a public official may be held liable in damages when his actions are found to violate a constitutional right and there is no qualified immunity." *Monell*, 436 U.S. at 707. The court then ruled that "this principle also applies to a local government when implementation of its official policies or established customs inflicts the constitutional injury." *Id.* at 708.

The individual Defendants are liable for their own unconstitutional behavior. To state a cognizable claim against an individual under § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Sigley v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir.2006). Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior. See *Gibson v. Matthews,* 926 F.2d 532, 535 (6th Cir.1991). Plaintiff has made many allegations in the Complaint based on the individual Defendants' actions that violate Plaintiff's rights. Further, supervisory officials are liable in their individual capacities of Plaintiff can show they "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v Jefferson Cnty*, 668 F.2d 869, 874 (6th Cir. 1982). Plaintiff has met that burden.

**5. <u>Title IX is a proper claim in this context</u>.**

Defendants then move to dismiss the Title IX claim by arguing that the Complaint does not demonstrate any sex-based discrimination that would trigger Title IX. Plaintiff disagrees. The Defendants have implemented policies based entirely on allowing pornography or sexually explicit material to minors based on DEI, SEL, social justice issues, and alternate sex and gender ideologies through sexually explicit books and lifestyles, and then silencing parents who speak against it is harassment based on sex. Title IX says: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." Plaintiff has been denied her right to speak to teachers based on her opposition to the alternate sex and gender ideologies taught to students through sexually explicit books and lifestyles. That is, by definition, sex-based discrimination which triggers Title IX.

**6. <u>Plaintiff stated a viable claim for breach of fiduciary duty</u>.**

To sustain a claim for breach of fiduciary duty, a plaintiff must prove (1) the existence of a duty, (2) breach of that duty, and (3) a proximate causal relationship between the breach of such duty and an injury to plaintiff. *Teadt v Lutheran Church Mo Synod*, 237 Mich App 567, 580-581; 603 NW2d 816 (1999). See also *Delphi Automotive PLC v Absmeier*, 167 F Supp 3d 868, 884 (E.D. Mich, 2016), citing *Teadt*, 237 Mich App at 580-581.

The first element is satisfied. The duty element of a claim for fiduciary duty requires proof of a *fiduciary* relationship. "A fiduciary relationship exists when there is a reposing of faith, confidence and trust and the placing of reliance by one upon the judgment and advice of another. *Williams v Griffin*, 35 Mich App 179; 192 NW2 283 (1971). Defendants argue there is no fiduciary

duty between school administrators, teachers, and parents. The Michigan Code of Educational Ethics[50] says otherwise. It directly creates a fiduciary relationship:

> **Fiduciary relationship:**
> A fiduciary relationship is one in which a person justifiably places confidence in another whose aid, advice, or protection is assumed. Inherent in such fiduciary relationships is an imbalance of power. Educators have a unique responsibility, as the relationship between student and teacher differs from other professional/client relationships (e.g., attorneys, physicians, clergy). Educators are entrusted with the safety and welfare of students during and after school hours and serve "in loco parentis."

The second element is satisfied because Plaintiff alleged the Defendants breached that duty. There is also proximate cause. Indeed, the Michigan Code of Educational Ethics states that teachers serve "in loco parentis" meaning "in place of a parent. When Defendants acted in the way described in the Complaint, by definition, they breached the duty by violating the will of the parents. Finally, there is clearly proximate cause between the breach and the injury: mainly that Plaintiff was prohibited from speaking with teachers absent permission which is always withheld.

Finally, conceding that there is a duty, breach, and proximate cause, Defendants fall back on reliance on immunity. Defendants claim Defendant Fowler is immune from tort claims because he "acted within the scope of his executive authority." Under no definition can it be said that "executive authority" includes violating a parent's right to free speech under the First Amendment. Defendants have made no demonstration that Fowler's actions were specific to his position. To the contrary, Plaintiff has properly pleaded, in detail, the claim.

Next, Defendants claim the remaining individual Defendants are immune because they believed they were acting within the scope of their authority and their actions were taken in good faith. This cannot possibly be true because they knew in every instance that their actions violated

---

[50] Exhibit 1

school policy. Their actions were not made in good faith. Defendants always intended to promote their own political agenda. When confronted by Plaintiff, they banned her from speaking to teachers. That is not "good faith." That is not "acting within the scope of authority."

**CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that this Honorable Court deny Defendants' motion in its entirety, permit this case to proceed with discovery, and grant such other relief as the Court deems just and proper.

Respectfully submitted

DePERNO LAW OFFICE, PLLC
Attorney for Plaintiff

Dated: October 28, 2024

/s/ *Matthew S. DePerno*
PO Box 1596
Portage, MI 49081
(269) 321-5064
matthew@depernolaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2024, I electronically filed the foregoing brief with the Clerk of the Court using the ECF system which will send notification of such filing of the foregoing document to all attorneys of record.

Dated: October 28, 2024

*/s/ Matthew S. DePerno*
Matthew S. DePerno (P52622)